UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. INCLAN,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | ) Case No. CV 10-6990 JCG<br>)<br>)<br>)<br>) **MEMORANDUM OPINION AND**<br>) **ORDER**<br>)<br>)<br>)<br>)<br>)<br>) |

## I.

## INTRODUCTION AND SUMMARY

On September 27, 2010, plaintiff Christopher J. Inclan ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI"). [Docket No. 3.]

On May 11, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 9, 10, 11.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is

substantial evidence in the record, taken as a whole, to support the decision of the Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's decision denying benefits.

## II.

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 24 years old on the date of his administrative hearing, has a high school education. (*See* Administrative Record ("AR") at 23, 27, 125.)

On April 4, 2008, Plaintiff filed for SSI, alleging that he has been disabled since January 1, 2006 due to spinal disease, high blood pressure, diabetes and obesity. (*See* AR at 72, 110, 125, 129.)

On November 12, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 23-64.) The ALJ also heard testimony from Howard J. Goldfarb, a vocational expert ("VE"), and Plaintiff's mother Sharon McKee, a lay witness. (*Id.*; *see also id.* at 118-20.)

On December 18, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 12-22.) Applying the familiar five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since his SSI application date. (*Id.* at 14.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of morbid obesity, insulin-dependent diabetes, hypertension, and "wedging of the T12-L1 vertebrae, with muscle spasm." (AR at 14 (emphasis omitted).)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairments, either individually or in combination, meet or medically equaled the severity of any listing set forth in the Social Security regulations.[1] (AR at 15.)

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

2

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and determined that he can "lift and carry 10 pounds occasionally, less than 10 pounds frequently, standing and walking two hours in an 8-hour workday, sitting without significant limitation." (AR at 16-17 (emphasis omitted).) The ALJ also found that Plaintiff "is precluded from climbing ropes, ladders and scaffolds but may engage in other postural activity occasionally" and "has no other significant limitations except he is precluded from workplace hazards such as dangerous machinery and unprotected heights as well as work requiring exposure to extreme heat." (*Id.* at 17 (emphasis omitted).)

The ALJ found, at step four, that Plaintiff has no past relevant work. (AR at 20.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including jewelry preparer, lens inserter, and optical assembler. (AR at 21-22 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 13, 22.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 8.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. whether the ALJ properly assessed Plaintiff's credibility, (*see* Joint Stip. at 11-14, 17-18); and

2. whether the ALJ properly evaluated Plaintiff's RFC. (*Id.* at 3-5, 9-10.)

# V.
# **DISCUSSION AND ANALYSIS**

A.  Plaintiff's Credibility

Plaintiff argues that "the ALJ failed to set forth legally sufficient reasons for rejecting his subjective complaints." (Joint Stip. at 11.) In particular, Plaintiff contends that "the ALJ selectively cited to the record to buttress his ultimate conclusion," but failed to "consider the record as a whole." (*Id.* at 12.)

1.  The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 12-22.) Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

2.  The ALJ Properly Rejected Plaintiff's Subjective Complaints

The Court is persuaded that the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's credibility. Four reasons guide this determination.

First, the ALJ found that the objective medical evidence does not support Plaintiff's alleged degree of disability. (AR at 14.) Plaintiff cannot identify any objective evidence that supports his claims of total disability. (Joint Stip. at 11-14,

17-18.)  A review of the record also demonstrates that no treating or evaluating physician opined an RFC assessment more restrictive than the one determined by the ALJ.  (*See generally* AR at 1-333.)  While a lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason for rejecting Plaintiff's testimony, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints.  *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Second, the ALJ properly relied on a lack of treatment in rejecting Plaintiff's subjective complaints of pain.  *Johnson v. Shalala*, 60 F.3d 1428, 1433-34 (9th Cir. 1995); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).  Despite allegations of disabling pain and an alleged onset date of January 1, 2006, Plaintiff did not seek treatment for his impairments until 2008.  (AR at 19 (ALJ finding "there is little record of any medical treatment or care in 2006 or 2007" and noting that "[s]urely, if [Plaintiff] were truly experiencing profound and debilitating symptoms during this period, he would have sought out at least some medical treatment and care"); *see id.* 194-333 (Plaintiff's medical records).)

Third, Plaintiff's poor work history is a clear and convincing reason to discount his testimony and subjective complaints.  (AR at 19 (ALJ finding that Plaintiff's "poor work history" demonstrates he "has never shown a commitment towards work"); *Thomas*, 278 F.3d at 958-59 (holding that claimant's "extremely poor work history" shows that she has little propensity to work and negatively affects "her credibility regarding her inability to work").  Substantial evidence supports the ALJ's finding.  Plaintiff's work record includes some construction work in 2003 when he was 18 years old and six months at a transportation company in 2006.  (*See* AR at 27-28 (Plaintiff's testimony that he worked in construction in 2003 and in 2006 for approximately six months); 123 (Plaintiff's earnings record

1 report indicating earnings of $2,847.69 in 2003).) As the ALJ noted, Plaintiff had
2 no earnings in 2004 or 2005. (*Id.* at 19; *See id.* at 125 (Plaintiff's alleged onset date
3 is January 1, 2006).)

4       Fourth, the ALJ properly discounted Plaintiff's subjective complaints based
5 on inconsistent statements regarding his level of discomfort and pain. (AR at 19);
6 *see Thomas*, 278 F.3d at 958-59 (upholding an adverse credibility finding in part due
7 to a claimant's inconsistent statements to her doctors). For instance, despite
8 Plaintiff's claims of near-total incapacity, he has reported on numerous occasions to
9 his treating physicians that he is "doing well" and his treating physicians have noted
10 that his symptoms are, for the most part, well controlled with medication. (*Compare*
11 AR at 40-46 (Plaintiff's testimony that he can sit for five or fifteen minutes at a time,
12 can stand five or ten minutes, can type for a "few minutes" before his hands "start to
13 get numb," or "some days" he will "be in bed most of the day" due to pain) *with id.*
14 at 288 (independent internal medicine evaluation, dated July 8, 2008, reporting that
15 Plaintiff "denies any blurry vision or any numbness or tingling sensation at this
16 time"), 309 (treatment note, dated March 26, 2009, indicating "no complaints"), 310
17 (treatment note, dated February 26, 2009, indicating patient is "doing well"), 311
18 (treatment note, dated January 24, 2009, noting "currently pain [is] mild"), 314
19 (treatment note, dated October 2, 2008, indicating Plaintiff "is well"), 315 (treatment
20 note, dated September 19, 2008, indicating "on meds, [patient] doing well" and
21 noting "no adverse effects").) The Court does not find, as Plaintiff suggests, the
22 ALJ developed his evidentiary basis by not fully accounting for the context of
23 materials or all parts of the testimony and reports.

24       Thus, the ALJ provided legally sufficient reasons supported by substantial
25 evidence for discounting Plaintiff's subjective complaints of pain.

26     B. <u>RFC Assessment</u>

27       Plaintiff contends that "the ALJ's [RFC] assessment lacks the support of
28 substantial evidence" because the ALJ failed "to find his diabetic neuropathy a

severe impairment" and "failed to fully and fairly develop the record as it pertains to his sleep apnea." (Joint Stip. at 4.)

### 1. The ALJ Properly Assessed Plaintiff's RFC

The Court finds that the ALJ's RFC assessment is supported by substantial evidence and any error made by the ALJ in his RFC evaluation was harmless. This Court's decision is grounded on two reasons.

First, step two was already resolved in Plaintiff's favor, *e.g.*, the ALJ found Plaintiff's morbid obesity, diabetes, hypertension, and back impairment to be severe and properly continued the sequential decision-making process until reaching a decision at step five. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Taylor v. Astrue*, 2010 WL 2773337, at *2-*3 (D. Or. 2010) (any error in failing to designate plaintiff's additional impairments as not severe did not prejudice him at step two, as step two was resolved in plaintiff's favor because ALJ found plaintiff had demonstrated several impairments necessary to satisfy step two).

Further, and more importantly, the Court is persuaded that the ALJ considered all the medical evidence and properly concluded that Plaintiff does not suffer from diabetic neuropathy such that it would have more than a slight effect on his ability to perform basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work.") (internal quotation marks and citation omitted). Although Plaintiff was diagnosed with neuropathy by a treating physician on a few occasions, (*see, e.g.,* AR at 313, 314, 315), *none* of his treating or examining physicians opined that Plaintiff's neuropathy imposed any functional limitations. (*See, e.g., id.* at 288-92, 301, 306-17.)

Moreover, a review of the record demonstrates that the only evidence

supporting Plaintiff's allegations is his own complaints, which the ALJ properly rejected, as discussed above. (*See* AR at 306 (treatment note, dated June 30, 2009, reporting Plaintiff states "feels pain and numbness/tingling in legs and feet on/off"), 312.)

Second, with respect to Plaintiff's contention that the ALJ "was aware that [Plaintiff] had been referred for a sleep study" and "could have waited for the results before issuing his decision," (Joint Stip. at 4), the Court finds, assuming *arguendo* any error on the ALJ's part in failing to obtain the results of the sleep study prior to issuing his decision, any error was harmless. Although the sleep study observed "mild obstructive sleep apnea," (AR at 324), the study did not find any additional limitations suffered by Plaintiff as a result of his sleep apnea. (*See generally id.* at 324-33 (adult polysomnograhic report conducted by sleep disorder center and dated March 1, 2010); *see also id.* at 16-17 (RFC assessed by ALJ).)

Further, while the Court notes that the sleep study provides support for Plaintiff's subjective complaints of daytime fatigue, (*see, e.g.,* AR at 36), as discussed above, the ALJ cited four proper reasons for discounting Plaintiff's credibility and the ALJ's credibility assessment remains valid. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Thus, the Court concludes that any error by the ALJ in failing to include diabetic neuropathy as a severe impairment and to consider the results of Plaintiff's March 2010 sleep study were harmless.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: August 23, 2011

                                       Hon. Jay C. Gandhi
                                       United States Magistrate Judge